UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KATHLEEN WILLIAMS, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 07 C 6997 |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO and CHRISTINE MUNNS, | ) Judge John W. Darrah |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kathleen Williams ("Williams") filed this action against Defendant Board of Education of the City of Chicago ("the Board") and Defendant Christine Munns ("Munns"), individually and as an agent of the Board, on December 13, 2007. The Complaint was filed before Judge George W. Lindberg. The Complaint alleged: (Count 1) a violation of Title VII by depriving Williams of her rights to equal protection and treating non-pregnant teachers differently than Williams, who was, at the time of the events in question, a pregnant teacher for Chicago Public Schools ("CPS"); (Count 2) an act of retaliation on the part of the Defendants; (Count 3) an equal-protection claim pursuant to 42 U.S.C. § 1983; (Count 4) a violation of the Family and Medical Leave Act, 42 U.S.C. § 2601, against Defendants; and (Count 5) tortious interference by Munns with regards to a contractual agreement between Williams and the

Board. (Compl. ¶¶ 34-82.) The Complaint sought an award of both injunctive and monetary relief, including compensatory and punitive damages. (*Id.*)

*Pretrial History*

Due to the lengthy pendency and unusual nature of this case, some background history is necessary. On February 29, 2008, Williams' prayer for punitive damages against the Board was withdrawn. (Docket Entry 19.) Defendants moved for summary judgment, and Judge Lindberg granted this motion in part and denied it in part. Judge Lindberg granted summary judgment as to Counts I and II under Title VII as they pertained to Defendant Munns. *Williams v. Board of Educ. of Chicago*, No. 07-CV-6997, 2009 WL 140124, at *2 (N.D. Ill. Jan. 21, 2009). Judge Lindberg denied summary judgment as to Williams' claim of Title VII discrimination against the Board. *Id.* Judge Lindberg granted summary judgment as to Plaintiff's Count II for retaliation on the part of the Board, finding that even if a negative evaluation had been placed in Williams' personnel file, this action would not rise to the level of an adverse employment action or retaliation. *Id.*, 2009 WL 140124, at *4. Judge Lindberg also granted summary judgment as to Williams' Section 1983 claim against the Board but denied summary judgment as to her Section 1983 claim against Munns. *Id.*, 2009 WL 140124, at *4-*5. Judge Lindberg granted summary judgment as to Williams' Family Medical Leave Act claim (Count IV) and her claim of tortious interference with a contract (Count V). *Id.*, 2009 WL 140124, at *5-*6. After Judge Lindberg's summary judgment motion ruling, the only claims remaining in this case were: (1) Williams' claim of Title VII

discrimination against the Board; and (2) Williams' Section 1983 equal-protection claim against Munns.

The Northern District of Illinois Executive Committee ordered this case reassigned to Judge Darrah on March 13, 2009. Attempts at settlement were fruitless, and on December 7, 2010, Plaintiff's legal counsel, Elaine K.B. Siegel & Associates, withdrew its representation of Williams. Thereafter, attorney Charles A. Boyle filed an appearance and has represented Williams hence. In March 2011, Williams moved for leave to "restore Plaintiff's Retaliation Count" more than two years after Judge Lindberg had granted summary judgment as to the retaliation claim. This so-called "restoration" motion was denied.

## Bench Trial

A bench trial as to the remaining two claims commenced on April 5, 2011. Trial was scheduled to resume on April 6, 2011, but Williams' attorney asked for a continuance because he was ill. Subsequently, Defendants moved to bar evidence of any unsatisfactory evaluation or other evidence relating to the retaliation claim on which summary judgment was entered against Williams. This motion was granted over Williams' objection, and Williams was strictly barred from presenting evidence that Defendants retaliated against Williams, or otherwise retained an "unsatisfactory" evaluation of the Plaintiff. (Docket Entry 175.)

The bench trial resumed December 5, 2011. The trial practice of Williams' counsel was highly unorthodox.[1] On December 8, 2011, it came to the attention of the Court that Williams' attorney, Charles A. Boyle, was not a member of the Trial Bar of the Northern District of Illinois, and therefore was not qualified to appear alone in testimonial proceedings pursuant to Local Rule 83.12. The trial was then re-set to continue on January 26, 2012, pending Boyle's admission to the Trial Bar. The bench trial resumed on January 26, 2012, and was completed on January 27, 2012.

*Post-Trial Motion*

On March 9, 2012, Williams moved to amend her pleadings to "conform to the evidence" pursuant to Fed. R. Civ. P. 15. Rule 15 permits an amendment to the pleadings as a case progresses and changes, when new evidence is introduced to support a change. *See Walton v. Jennings Community Hosp., Inc.*, 875 F.2d 1317, 1320, n.3 (7th Cir. 1989). Williams' motion makes no references to any legal authority, nor does it refer to any evidence submitted at trial.[2] It is entirely unclear from this motion what, if anything, Williams seeks to amend or incorporate into her Complaint, though based on the

---

[1] On April 5, 2011, Plaintiff attempted to admit into evidence that had been identified as Plaintiff's Exhibit 133. Defendants objected to the admission of this exhibit, which purported to be a letter from the Chicago Teacher's Union, dated March 10, 2005, on the bases of a lack of foundation and hearsay. After a lengthy sidebar, Defendants' objection to Exhibit 133 was sustained. On December 7, 2011, Plaintiff attempted to admit this same purported letter into evidence, by renumbering it as Plaintiff's Exhibit 170, without informing the Court of this renumbering. No satisfactory explanation of this renumbering of an exhibit that was previously denied admission has ever been submitted to the Court.

[2] The motion states, "Plaintiff re-alleges all plaintiffs' [sic] prior allegations set forth in all counts of the complaint." (Pl. Mot. to Amend, ¶ 1.) Plaintiff apparently refuses to acknowledge that many of the allegations lodged in the Complaint were dismissed by the previous summary judgment ruling.

4

allegations of a supposed "unsatisfactory rating," one can surmise Williams is, yet again, seeking to re-assert her retaliation claim. As explained above, Williams' retaliation claim was dismissed by summary judgment. Williams' previous attempts to reinstate the retaliation claim despite this specific ruling were also denied, and Williams was specifically barred from raising at trial any evidence relating to an unsatisfactory evaluation or other evidence relating to a claim of retaliation. Therefore, Williams could not, and did not, introduce evidence to support a retaliation claim at trial. Williams asserts no basis to reverse the Court's previous summary judgment ruling, therefore, this motion to amend the pleadings is denied.[3]

*Consideration of Evidence and Law*

The bench trial included the testimony of several witnesses and the admission of various exhibits into evidence. The parties also submitted written closing arguments, written responses to those arguments, and proposed findings of fact[4] and conclusions of law.

The Court has considered the evidence, including the testimony of the witnesses and exhibits, and has further considered the written submissions of counsel for the parties and the authority cited therein. The Court weighed the testimony of each witness and determined whether the testimony was truthful and accurate (in part, in whole, or not at all) and decided what weight, if any, to give to the testimony of each witness. In making

---

[3] Williams also failed to provide notice of this motion, as required by Local Rule 5.3.

[4] To the extent a proposed finding of fact relied on information not in evidence at trial, this proposed finding of fact was disregarded.

this determination, the Court considered, among other things: the ability and opportunity of the witness to see, hear, or know information about which the witness testified; the witness's memory; any interest, bias, or prejudice the witness may have; the witness's intelligence; the manner of the witness while testifying; and the reasonableness of the witness's testimony in light of all of the evidence in the case. *See* Fed. Civ. Jury Instr. 7th Cir. § 1.13 (2009).

Pursuant to Federal Rule of Civil Procedure 52, the Court enters the following written Findings of Fact and Conclusions of Law, which are based upon consideration of all the admissible evidence and this Court's own assessment of the credibility of the trial witnesses within the context discussed above. To the extent, if any, that Findings of Fact, as stated, may be considered Conclusions of Law, they shall be deemed Conclusions of Law. Similarly, to the extent, if any, that Conclusions of Law, as stated, may be considered Findings of Fact, they shall be deemed Findings of Fact. The Decision section of this Opinion and Order, for purposes of organization and clarity, contains some reference to law and facts. To the extent, if any, that any part of the Decision may be considered Findings of Fact or Conclusions of Law, it shall be so deemed.

## FINDINGS OF FACT

Sauganash Elementary School is a school in the CPS system, operated by the Board, which instructs children from kindergarten through eighth grade. The principal of Sauganash is Defendant Munns, who had previously served as Sauganash's assistant principal. Prior to her role in Sauganash's administration, Munns was a teacher employed by the Board. Munns is married and has two children; she previously had

taken a maternity leave during the course of her employment with the Board. Munns has the ability, as principal, to recommend individuals to be hired at Sauganash. She also has the discretion and authority to assign employees to positions within Sauganash as she determines to be in the best interests of the school and its purpose of educational instruction. In this regard, Munns selected Melissa Raich to serve as her assistant principal at Sauganash in 2001, and Raich continues to hold this position. Prior to her role as assistant principal, Raich was employed as a teacher by the Board.

Prior to March 2003, Williams worked as a substitute teacher at Sauganash. As a substitute teacher, Williams was not required, at that time, to possess a Type 3 teaching certificate. Beginning in March 2004, Williams assisted as a student teacher in the classroom of Terri Court, a Special Education teacher at Sauganash, as a student teacher. In this role, Williams was not certified to work as a regular teacher in the Board. Munns did not evaluate Williams' performance during her student teaching, nor was Munns required to do so. Assistant Principal Raich, Special Education teacher Terri Court, and another teacher, Denise Abad, recommended to Munns that Williams be hired as a full-time teacher at Sauganash for the 2004-2005 school year. Relying on these endorsements, Munns recommended to the Board that Williams be hired and staffed at Sauganash as a probationary-appointed teacher ("PAT") for the third grade.

*The Non-Renewal Process*

Williams was then hired by the Board to be a PAT, which meant she was subject to a four-year probationary period pursuant to the 2003-2007 Collective Bargaining Agreement between the Chicago Teachers Union and the Board. During this four-year probationary period, a PAT is subject to non-renewal of her position on an annual basis. A principal may recommend to the Board that a PAT be non-renewed. The Board does not require that a principal receive formal or written complaints about a PAT prior to recommending a non-renewal, nor does it require a principal to use a particular form to evaluate a PAT's performance with respect to a non-renewal. Principals in CPS are not required to perform a classroom observation of a PAT prior to recommending non-renewal. According to the Board's rules and the Collective Bargaining Agreement, a PAT's prior performance evaluations and ratings do not immunize her from a non-renewal, nor did a PAT's being pregnant immunize her.

Under this Collective Bargaining Agreement, there is no remediation process for PATs who are non-renewed, and PATs are not entitled to hearings regarding their non-renewal decisions. PATs must receive written notice of their non-renewals at least thirty days prior to the end of the school year in which they are not being renewed. PATs who are non-renewed may still seek employment in other CPS schools; non-renewal differs from the formal remediation process for teachers, which can result in an immediate discharge, and the assignment of a "Do Not Hire" designation in a teacher's employment file. Individuals with "Do Not Hire" designations are barred from seeking employment at any of the Board-operated schools.

In January 2006, the Board asked its principals to identify PATs they believed should not be renewed for the following school year. Principals were prohibited from immediately submitting identification of these individuals to the Board. Only during the time period of February 17, 2006, to March 17, 2006, could principals electronically submit to the Board their recommendations regarding non-renewals. According to the Board's rules and the Collective Bargaining Agreement, principals were not permitted to disclose their non-renewal recommendations prior to the Board's approval of their recommendations in April 2006. Pursuant to a directive from the Board, dated April 27, 2006, principals were instructed to inform PATs of their non-renewal statuses on April 28, 2006.

*Williams' Performance*

Williams began her first year as a PAT at Sauganash in the fall of 2004, teaching a class of third-graders, which included some special-education students. Based in part on a review of Williams' lesson plans and feedback from Assistant Principal Raich, Munns gave Williams a "Superior" rating for the 2004-2005 school year. Williams was renewed as a PAT for Sauganash for the following academic year, though reassigned to teach second, rather than third grade. Williams was moved to second grade because third grade is a benchmark year, where students are given standardized tests, and Williams' 2004-2005 third-grade class received low marks on its standardized testing compared to other classes at Sauganash.

Assistant Principal Raich had a friendly, personal relationship with Williams. Raich was hesitant to inform Munns of concerns she had regarding Williams'

performance but eventually explained to Munns that she was aware of Williams' having problems communicating with both parents and support staff. Munns trusted Raich as her assistant principal and relied on Raich's judgment to form her impressions of Williams' performance and to make her decision regarding Williams' non-renewal. Multiple classroom aides and paraprofessionals requested they be re-assigned from Williams' classroom to other teachers' classrooms during the 2005-2006 school year. Raich received complaints from a special-education teacher about Williams' performance in Fall 2005; the teacher believed Williams had failed to properly implement the Individual Education Plan of a special education student. The parent of a student also accused Williams of hanging up on her during a phone conversation regarding the student's progress. Munns informally observed Williams' in her classroom on December 15, 2005.

Raich and Munns met in the winter break of the 2005-2006 school year to discuss the possible non-renewals of Williams and another teacher at Sauganash, Monica MacKenzie. Beyond their concerns regarding Williams' performance discussed above, they also acknowledged their concern regarding Williams' commitment to her job. They believed it was Williams' position that she need not come in to work earlier or stay later than what was specifically required of her by the Board, despite many Sauganash teachers regularly exceeding the required hours. Munns decided at this time to non-renew Williams, and Williams' pregnancy was not a motivating factor in her non-renewal decision.

On March 17, 2006, Munns entered her decision to non-renew both Williams and Monica MacKenzie into the Board's electronic non-renewal system. Of the pre-set options in the non-renewal system, Munns selected "Deficiencies with Communication – Parent Conference Skills; Relations With Staff" as the basis of Williams' non-renewal. Munns simultaneously renewed the positions of six other PATs, including one teacher who was on a leave related to her pregnancy at the time of her renewal. Munns was prohibited from disclosing Williams' non-renewal until the Board approved of the non-renewal recommendations. The Board approved of the non-renewal of approximately 1,062 teachers on April 26, 2006, and directed all principals to inform the non-renewed teachers of their non-renewal on April 28, 2006. Williams learned of her non-renewal from Munns at that time.

*Williams' Pregnancy Was Unrelated to Her Non-Renewal*

Munns and Assistant Principal Raich discussed Williams' non-renewal during the 2005-2006 winter break. In Munns' tenure as principal of Sauganash, fourteen employees of the school requested and were granted maternity or paternity leaves, or other arrangements were made relating to pregnancies and adoptions. None of those fourteen employees were non-renewed or dismissed by the Board. It is unclear on what date Munns was made aware of Williams' pregnancy; however, it is clear Munns would have been willing to accommodate Williams' pregnancy and maternity leave plans had she chosen to renew Williams at Sauganash. Another PAT at Sauganash was recommended for renewal by Munns while on a leave related to that PAT's pregnancy. As principal, Munns also established other accommodations for mothers returning to

11

work at Sauganash after a maternity leave: for example, she designated an official area in the school for nursing mothers to use to express their milk in privacy, and she also placed a refrigerator near this area where nursing mothers could preserve their breast milk.

The basis for Williams' non-renewal was not her pregnancy but, rather, her inability to effectively communicate with her peers and the parents of her students. Furthermore, the students in Williams' class had performed poorly on the standardized Iowa tests. The Board had a reasonable basis to non-renew Williams as a probationary assigned teacher, and Munns properly recommended her for non-renewal, without giving consideration to Williams' pregnancy.

## CONCLUSIONS OF LAW

Williams has two claims which survived an earlier summary judgment motion: (1) a claim of Title VII discrimination against the Board; and (2) a Section 1983 equal-protection claim against Munns.

*Title VII Pregnancy Discrimination*

Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, prohibits the discrimination of a pregnant employee by an employer. Employment discrimination on the basis of a pregnancy is treated as discrimination on the basis of gender, and the legal analysis is the same. *See Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) (*Serednyj*). Williams may prove her claim of discrimination under the direct or indirect method. *Id.*

## Direct Method

A plaintiff may prove discrimination under the direct method by presenting either direct or circumstantial evidence that the employer made an adverse employment action against her due to an impermissible reason, such as her gender or her pregnancy. *Id.* (citing *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (*Rhodes*)). "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. In short, 'direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Rhodes*, 359 F.3d at 504 (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)).

Alternatively, a plaintiff may prevail by painting a picture of discrimination, using circumstantial evidence, whereby a trier of fact can infer intentional discrimination. *Rhodes*, 359 F.3d at 504. This circumstantial evidence "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). Circumstantial evidence of this nature can be identified in three categories. First, a plaintiff might prove the discrimination by "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent may be drawn." *Serednyj*, 656 F.3d at 549 (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994) (*Troupe*)). Second, a plaintiff can prove discrimination with comparative circumstantial evidence by demonstrating that employees not within the protected class systematically received better treatment than an

13

employee within the protected class; i.e., the employees who were not pregnant were consistently treated better than the pregnant employees. *Id.* Finally, circumstantial evidence can show discrimination where the adverse employment action occurred and the employer's stated reason for the action is "unworthy of belief, a mere pretext for discrimination." *Troupe*, 20 F.3d at 736.

### Indirect Method

A plaintiff may also prove discrimination by the indirect method, which requires the plaintiff to make the *prima facie* case for discrimination. *Serednyj*, 656 F.3d at 550. To establish a *prima facie* case for pregnancy discrimination, the plaintiff must show: "(1) she was pregnant and her employer knew she was pregnant; (2) she was performing her job duties satisfactorily; (3) she was [subjected to an adverse employment action]; and (4) similarly situated, nonpregnant employees were treated more favorably." *Id.* (internal citations omitted). However, once the issue of discrimination proceeds to trial, there need not be a burden-shifting analysis as suggested in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *McDonnell Douglas* requires a *prima facie* case for discrimination, followed by a shift of the burden to the defendant, who must provide a legitimate reason for the adverse employment action. Once a discrimination claim proceeds to trial, the need for burden-shifting is eliminated, and the burden to prove intentional discrimination remains with the plaintiff. *Smith v. Molly Maid, Inc.*, 415 F. Supp. 2d 905, 916 (N.D. Ill. 2006) (*Molly Maid*) (citing *Nawrot v. CPC Intern.*, 277 F.3d 896, 905-906 (7th Cir. 2002)). "Therefore, at trial, the court must weigh all the evidence and, in short, 'decide which party's explanation of the employer's motivation it believes.'"

*Molly Maid*, 415 F. Supp. 2d at 916 (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S. Ct. 1478 (1983)).

*Equal Protection Under 42 U.S.C. § 1983*

To prevail on a claim of equal protection under Section 1983, a plaintiff must show she: "(1) is a member of a protected class; (2) is otherwise similarly situated to members of the unprotected class; (3) suffered an adverse employment action; (4) was treated differently from members of the unprotected class; and (5) the defendant acted with discriminatory intent." *McPhaul v. Board of Commissioners of Madison County*, 226 F.3d 558, 564 (7th Cir. 2000). To show liability in an equal-protection action, a plaintiff must prove intentional or purposeful discrimination. *See Nabozny v. Podlesny*, 92 F.3d 446, 454 (7th Cir. 1996). The Seventh Circuit has acknowledged that proving a case for an equal-protection claim is essentially identical to an intentional discrimination claim under Title VII, opining that the fifth element of acting with discriminatory intent is redundant. *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003).

A defendant may raise as an affirmative defense the defense of qualified immunity. Qualified immunity provides protection for a public official, shielding her from being sued in her personal capacity. To determine if qualified immunity is available for a defendant, a court must first determine "whether a constitutionally protected right has been violated." *Alexander v. City of Milwaukee*, 474 F.3d 437, 444 (7th Cir. 2007). If a violation is found, the court must then determine if the "right was clearly established at the time of the violation." *Id.* The Seventh Circuit has provided that a government official is shielded from § 1983 liability if "*either* the federal law he is asserted to have

15

breached was not clearly established at the time of the alleged violation or there exists no genuine dispute of material fact which would prevent a finding that his actions, with respect to following such clearly established law, were objectively reasonable." *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1038 n.22 (7th Cir. 2003) (quoting *Tangwall v. Stuckey*, 135 F.3d 510, 515 (7th Cir. 1998)).

**DECISION**

Williams has failed to show, by a preponderance of the evidence, that her non-renewal at Sauganash was in any way motivated by her pregnancy.

*No Title VII Discrimination*

Williams was unable to prove the Board discriminated against her on the basis of her pregnancy by either the direct or indirect method.

Williams has presented no direct evidence of an admission by any decision-maker with the Board that she was non-renewed because of her pregnancy. With no clear statement from a decision-maker identifying her pregnancy as the basis of her non-renewal, Williams cannot show direct evidence of discrimination.

Nor has Williams presented sufficient circumstantial evidence which would create an inference of intentional discrimination. Williams relies heavily on the suspicious timing of her non-renewal as it coincided with her announcing her pregnancy. Williams argued she was non-renewed after she announced she was pregnant but was unable to definitively establish the date of this announcement. The Board argued that the decision to non-renew her was made in January 2006, before Defendants were aware of Williams' pregnancy. Regardless of this timing, Williams has not shown that her pregnancy was

16

the reason she was non-renewed. Moreover, suspicious timing alone is not enough to infer causation. "The mere fact that one event preceded another does nothing to prove that the first event caused the second." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Williams presented no circumstantial evidence that non-pregnant employees received better treatment than her – in fact, the evidence presented directly rebuts this. Another pregnant teacher, Karen Dreyfuss, was on a leave of absence relating to her pregnancy when she *was* renewed as a PAT. Furthermore, another PAT, Monica MacKenzie, was also non-renewed during the 2005-2006 school year, and MacKenzie was not known to be pregnant at that time. Finally, the circumstantial evidence does not show that the basis of Williams' non-renewal was pretextual: legitimate reasons were identified supporting her non-renewal, including her communication problems with the staff, parents, and her inability to take constructive feedback. These reasons, taken alone, would be enough to justify Williams' non-renewal, in addition to her students' comparatively poor performance on standardized testing.

Williams has failed to establish a *prima facie* case for discrimination on the basis of her pregnancy. To do so, Williams must show: (1) Williams was pregnant and the Board and Munns knew this; (2) Williams was performing her job satisfactorily; (3) Williams suffered an adverse employment action, such as a non-renewal; and (4) similarly situated, non-pregnant employees at Sauganash were treated more favorably than Williams. *See Serednyj*, 656 F.3d at 550. Williams cannot meet all of the elements of this claim. First, Williams has not proven, by a preponderance of the evidence, that

Defendants knew she was pregnant, specifically at the time of Munns' and Raich's meeting in January 2006, where they decided to recommend Williams' non-renewal. The testimony of Munns and Raich on this issue was credible, persuasive, and unimpeached. Second, while Williams presents some evidence showing her teaching performance in a positive light (her Superior rating for the 2004-2005 school year, for example), the evidence supporting her unsatisfactory performance rebuts this. Multiple support staff in her classroom requested to be reassigned to other teachers, parents complained about her performance, and her students did not perform well on standardized tests. Williams failed to meet the standards expected of her at Sauganash. Finally, non-pregnant Sauganash employees were not treated more favorably than Williams; another PAT was also non-renewed based on performance issues, and she was not pregnant at the time of her non-renewal. The evidence failed to establish, by a preponderance of the evidence, that Williams was the subject of discrimination by the Board. Rather, the evidence was clearly to the contrary: Williams' non-renewal was unrelated to her pregnancy but was the direct result of her substandard performance. Had Williams not been pregnant, she would have still been non-renewed at Sauganash.

Williams cannot make a *prima facie* case for intentional discrimination by the Board. Furthermore, the Board has identified legitimate reasons for her non-renewal: her substandard performance, specifically, her lack of proper communication with parents and colleagues, and her students' standardized testing scores. Williams is unable to demonstrate that these legitimate reasons are merely pretextual. Therefore, Williams has

not proved, by a preponderance of the evidence, that the Board discriminated against her by non-renewing her on the basis of her pregnancy.

*No Section 1983 Equal-Protection Claim*

Similarly, Williams has failed to prove her claim against Munns alleging a violation of her equal-protection rights. As explained above, determining a Title VII claim of intentional discrimination requires virtually identical analysis as an equal-protection claim. Williams has failed to prove, by a preponderance of the evidence, that other, non-pregnant employees at Sauganash were treated differently than her. As discussed above, another, non-pregnant PAT was non-renewed at the same time as Williams for other performance issues. Furthermore, the evidence indicates that Sauganash under Munns' leadership has a record of being accommodating to expectant parents, with many other employees taking maternity and paternity leaves without adverse employment actions taken against them by Munns. Williams presented no evidence that Munns intentionally or purposefully discriminated against her; indeed, Munns and Assistant Principal Raich both testified that the decision to non-renew Williams was made in January 2006, before Williams' pregnancy was known to them. Because Williams cannot make a *prima facie* case for an equal-protection claim, her claim against Munns must fail. Therefore, no determination as to Munns' qualified immunity is necessary.

## CONCLUSION

Based on the foregoing, it is hereby ordered, adjudged, and decreed, pursuant to Title VII of the Civil Rights Act and the Pregnancy Discrimination Act, 42 U.S.C. § 2000 *et seq.*, and 42 U.S.C. § 1983:

    A.    That a judgment is entered in favor of the Chicago Board of Education on Kathleen Williams' Title VII pregnancy discrimination claim; and

    B.    That a judgment is entered in favor of Christine Munns on Kathleen Williams' 42 U.S.C. § 1983 equal-protection claim.

Date: 3-22-12

JOHN W. DARRAH
United States District Court Judge